**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

VICTOR MARSHALL,

    Plaintiff,

v.                                                                                                          No. 1:23-cv-00494-MIS

C. SHANNON BACON, *Chief Justice*
*of the Supreme Court of New Mexico*;
MIKE HAMMAN, *State Engineer*
*of the State of New Mexico*;
ROLF SCHMIDT-PETERSEN, *Director*
*of the New Mexico Interstate Stream Commission*;
HOWARD THOMAS, *Chair*
*of the Disciplinary Board of New Mexico*;
ANNE L. TAYLOR, *Chief Disciplinary Counsel*
*for the Disciplinary Board*;
JANE GAGNE, *Assistant Disciplinary Counsel*
*for the Disciplinary Board*;

       Defendants,
       in their official capacities only.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

**THIS MATTER** is before the Court on Motions to Dismiss from Defendants C. Shannon Bacon, ECF No. 20; Mike Hamman and Hannah Riseley-White,[1] ECF No. 21; and Howard Thomas, Anne L. Taylor, and Jane Gagne, ECF No. 22. Plaintiff Victor Marshall responded to all three motions, respectively, ECF Nos. 45, 47, 46, and Defendants replied, respectively, ECF Nos. 65, 67, 69. Upon due consideration of the parties' submissions, the record, and the relevant law the Court will **GRANT** the Defendants' Motions.

---

[1] Rolf Schmidt-Petersen was the former Director of the Interstream State Commission and was sued in his official capacity only. Hannah Risely-White is the current Director, and in that role filed a Motion to Dismiss alongside State Engineer Mike Hamman. ECF No. 21.

1

I.  BACKGROUND[2]

Unraveling Marshall's Amended Complaint is no easy task. Over the course of that filing, Marshall implicates the Public Broadcasting Service (PBS), the Navajo Nation, retired federal judges, a former United States Senator, various state-level employees and bureaucratic functionaries, and the now-deceased former Governor of New Mexico, Bill Richardson, in a web of judicial and political corruption that ultimately ensnared Marshall and led to his suspension from the practice of law. That list does *not* include the named Defendants: the Chief Justice of the Supreme Court of New Mexico; the State Engineer of New Mexico and the Director of the Interstate Stream Commission for the State of New Mexico ("State Employee Defendants"); and three members of the Disciplinary Board for the State of New Mexico ("Disciplinary Board Defendants"). The Court will not recount all of Marshall's numerous allegations, but those most salient to the Court's analysis are as follows:

Marshall worked as an attorney in New Mexico until 2022, when he was suspended by the Supreme Court of New Mexico. ECF No. 8 ("Amended Complaint") ¶ 15. Marshall's suspension came about over the course of his representation of a group of acequias[3] and landowners engaged in water-rights litigation against the Navajo Nation. ECF No. 8-1 at 283.

Overseeing that case were two retired federal judges: Judge James Wechsler at trial, and Judge Bruce Black on appeal. Am. Compl. ¶¶ 17, 19. While not directly at issue here, Marshall spends much of his complaint alleging various constitutional and ethical deficiencies regarding the

---

[2] The Court accepts as true all well-pleaded factual allegations in Plaintiff's First Amended Complaint and draws all reasonable inferences in Plaintiff's favor for the purposes of Rule 12(b)(6).

[3] Community-operated watercourses.

appointment of those judges, payments made to those judges, and bias relating to those judges' former work as attorneys. *See id.* ¶¶ 16-21.

In 2009, Judge Wechsler approved a settlement between the Navajo Nation, United States, and the State of New Mexico, over Marshall's clients' objections. *In re Marshall,* 528 P.3d 653, 659-60 (N.M. 2023).[4] Marshall, while appealing that ruling, submitted an emergency motion for disqualification alleging that Judge Wechsler had, *inter alia*, concealed the fact that he had been a lawyer for the Navajo Nation; that "disquieting rumors about Judge Wechsler [had circulated] in the New Mexico Legislature"; and that "the public might reasonably wonder whether the judge fixed this case for his former client." *Id.*; ECF No. 8-1 at 150, 189.

Finding Marshall's attack on Judge Wechsler's integrity and impartiality to have been made without any factual foundation, the New Mexico Court of Appeals imposed sanctions on Marshall and referred him to the Disciplinary Board of the Supreme Court of New Mexico. *Marshall*, 528 P.3d at 660. Marshall filed a motion for rehearing, reiterating his attacks on Judge Wechsler, which was denied. *Id*. Marshall then filed a petition for a writ of certiorari before the Supreme Court of New Mexico, which was also denied. *Id.*

---

[4] Plaintiff's Amended Complaint repeatedly references what he calls "new rules . . . first used against [Plaintiff] . . . in two recent opinions'" from the Supreme Court of New Mexico (in which that court ruled on Plaintiff's suspension). Am. Compl. ¶ 1. Plaintiff has not, however, attached documentation of those proceedings to either his Complaint or Amended Complaint. To better understand Plaintiff's claims, the Court relies on (and cites to) decisions and orders from the Supreme Court of New Mexico throughout this Order.
    Typically, a Rule 12(b)(6) motion must be treated as a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Conversion is not required, however, when the court considers (1) documents which the complaint incorporates by reference; (2) documents referred to in the complaint that are central to the plaintiff's claim and whose authenticity is not challenged; and (3) matters of which a court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).
    Further, a court may consider documents reflecting facts that "are a matter of public record" for the purpose of "show[ing] their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). This includes another court's publicly filed records "concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).
    The Supreme Court of New Mexico opinions at issue here are eligible for consideration, without treating the underlying pleading as a motion for summary judgment, as both (1) documents incorporated into the complaint by reference and (2) public court proceedings.

Concurrently, Disciplinary Counsel filed charges with the Disciplinary Board, recommending a public censure of Marshall. *Id*. at 660; 669. At a hearing before a committee of the Disciplinary Board, Marshall was found to have violated numerous rules of professional conduct, and the committee recommended his indefinite suspension from the practice of law (a more extreme consequence than that requested by Disciplinary Counsel, but one the committee argued was necessary due to Marshall's continued denial that his conduct had been improper). *Id*. at 669. Marshall requested a subsequent hearing on the committee's findings, at which a Disciplinary Board hearing panel adopted the findings of the committee and upheld the committee's recommendation. *Id*. That panel then petitioned the New Mexico Supreme Court to adopt their findings. *Id*. Marshall replied to that petition, alleging various constitutional violations by both the hearing committee and panel. *Id.*

The Supreme Court of New Mexico issued an order suspending Marshall in January of 2022, followed by an opinion outlining their reasoning on March 13, 2023. ECF No. 20-2; *Marshall,* 528 P.3d at 653. On April 7, 2022—prior to the issuance of that opinion, but after the order suspending him had been finalized— Marshall filed a Petition for Writ of Certiorari to the United States Supreme Court, alleging various constitutional violations on the part of the Supreme Court of New Mexico in suspending him. *See* Pet. for Writ of Cert., *Marshall v. Supreme Ct. of N.M.*, 2022 WL 1093272 (Apr. 7, 2022). The United States Supreme Court denied his petition in May of 2022. *Marshall v. Supreme Ct. of N.M.*, 142 S. Ct. 2752 (2022).

Marshall filed the initial Complaint in this action on June 7, 2023, after the Supreme Court of New Mexico issued its order suspending him and its opinion outlining its reasoning for doing so, and after the Supreme Court of the United States denied his Petition for Writ of Certiorari. ECF No. 1. Marshall proceeds *pro se*.

Marshall's Amended Complaint[5] attacks what he terms the "new censorship rules which have been imposed on all lawyers practicing in New Mexico . . . first used against Victor Marshall . . . ." Am. Compl. ¶ 1. Plaintiff alleges that the "new rules" were created to "conceal serious judicial misconduct committed by several judges," including Judges Wechsler and Black, as well as Chief Justice C. Shannon Bacon of the Supreme Court of New Mexico. *Id*.

Marshall seeks numerous forms of relief, to include (1) the vacation of his suspension and fines; (2) a declaration that the "new rules . . . violate the First Amendment and the due process clause of the Fifth Amendment"; (3) injunctions against the Disciplinary Board Defendants and Defendant Bacon; and (4) various injunctions and orders to be levied at the State Employee Defendants, such as that they "report to the Court within 60 days with proposals to eliminate the conflict of interest that exists when [their agencies] are paying large sums of money to Judge Wechsler's immediate family." *Id*. ¶ 123.

Both Disciplinary Board and State Employee Defendants move to dismiss Marshall's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) (invoking sovereign immunity under the Eleventh Amendment) and 12(b)(6). ECF No. 21 at 1, ECF No. 22 at 1. Defendant Bacon moves to dismiss Marshall's complaint on jurisdictional grounds pursuant to the *Rooker-Feldman* doctrine (discussed *infra* III.C) and through application of the doctrines of claim preclusion and res judicata. ECF No. 20 at 2.

---

[5] Plaintiff's initial briefing totaled 455 pages between the Complaint and attached exhibits. ECF No. 1. Following an order from Magistrate Judge John Robbenhaar to file an amended complaint no longer than 35 pages, ECF No. 7, Plaintiff filed his operative Amended Complaint, ECF No. 8, on June 27, 2023.

## II.     STANDARD OF REVIEW

### A. Lack of Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998).

"[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Id*. at 104. Rule 12(b)(1) allows defendants to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

### B. Failure to State a Claim

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when a plaintiff has failed to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when the pleaded facts "allow[]

6

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Further, while reviewing courts "must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (internal citations omitted). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 679.

Typically, pro se litigant filings are held to "a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the benefit of liberal construal does not extend to pro se litigants trained as attorneys (such as Plaintiff), regardless of their current licensure status. *See, e.g.*, *McNamara v. Brauchler*, 570 F. App'x 741, 743, n. 2 (10th Cir. 2014) (citing *Mann. v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007)).

### III.   DISCUSSION

**A. Marshall Advances No Plausible Claims Against State Employee Defendants**

Marshall's Amended Complaint, while primarily a challenge to his suspension, peripherally attacks several of the parties connected to the water-rights litigation that ultimately led to his being disciplined. *See, e.g.*, Am. Compl. ¶¶ 108-121 (identifying thirteen causes of action, of which only two do not arise from the "new rules and sanctions" unrelated to any actions by the State Employee Defendants). Marshall accuses the State Employee Defendants (and their respective offices), of "grossly improper conduct" in paying "more than three million dollars in

7

legal fees to Judge Wechsler's son and his law firm, while Judge Wechsler presided over water cases where the State Engineer is a party." *Id*. ¶ 85. Marshall also alleges that "Judge Wechsler engaged in *ex parte* communications with the State Engineer, and refused to disclose them to the other parties." *Id*. ¶ 89.[6] Defendants move to dismiss on the grounds of (1) Rule 12(b)(6) and (2) Rule 12(b)(1), pursuant to their claimed immunity under the Eleventh Amendment.[7] ECF No. 21 at 4, 8. For the reasons that follow, the Court finds that State Employee Defendants lack sovereign immunity pursuant to the *Ex parte Young* exception to the Eleventh Amendment. However, Marshall fails to plausibly allege that State Employee Defendants violated any laws giving rise to a cause of action, and his claim must thus be dismissed pursuant to Rule 12(b)(6).

1. **State Employee Defendants are Not Entitled to Sovereign Immunity**

Where defendants move for dismissal on the grounds of sovereign immunity pursuant to the Eleventh Amendment, courts must address the issue prior to determining the merits of the case. *See*, *e.g.*, *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001) ("Once effectively raised, the Eleventh Amendment becomes a limitation on our subject-matter jurisdiction, and we may not

---

[6] Even where Marshall does address actions taken by State Employee Defendants, he primarily does so by focusing on Judge Wechsler's alleged misconduct. *See, e.g*., Am. Compl. ¶ 16 ("[T]he State Engineer has paid more than $3,000,000 in legal fees to Judge Wechsler's son and his son's law firm . . . . It is gross misconduct for a judge to act on a case if one of the parties is paying large amounts of money to one of the judge's children"); *id*. ¶ 89 ("Judge Wechsler engaged in *ex parte* communications with the State Engineer, and refused to disclose them to the other parties."). But neither Judge Wechsler's allegedly improper failure to recuse nor his alleged failure to disclose *ex parte* contacts with the State Employee Defendants provide a cause of action against the State Employee Defendants themselves.
  Marshall continues to highlight previous judicial misconduct not at issue here in his Response to State Employee Defendants' Motion to Dismiss, citing "the New Mexico Code of Judicial Conduct and federal case law as regards judicial impartiality, judicial disclosure, and the appearance of impropriety" in support of his position regarding State Employee Defendants' wrongdoing. ECF No. 47 at 2. None of those rules relate to State Employee Defendants conduct. While Marshall alleges that "the state engineer and the ISC created or enabled the judicial conflicts of interest, and concealed them[,]" that conclusory legal assertion is not supported by factual assertions.

[7] While State Employee Defendants do not expressly link their Eleventh Amendment claim to their invocation of Rule 12(b)(1), this Court interprets their claim to sovereign immunity as a jurisdictional claim analyzed pursuant to that rule.

then assume 'hypothetical jurisdiction' to reject a plaintiff's claim on the merits.") (citation omitted).

The Eleventh Amendment generally prohibits citizens from suing states in federal court. *See, e.g.*, *Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998). That immunity, however, is not absolute. What is known as the *Ex parte Young* doctrine "has carved out an alternative, permitting citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities." *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

The Tenth Circuit has outlined a four-part inquiry allowing suits to proceed under *Ex parte Young*: (1) plaintiffs must be suing state officials, rather than the state itself; (2) plaintiffs must allege a non-frivolous violation of federal law; (3) plaintiffs must be seeking prospective and equitable relief (rather than retroactive monetary relief); and (4) the suit must not implicate special sovereignty interests. *Id.*

The first requirement for suits to proceed pursuant to *Ex parte Young* is that plaintiffs be suing state officials, rather than the state itself. *Id.*; *see also Elephant Butte*, 160 F.3d at 607-08 ("[T]he Eleventh Amendment generally does not bar a suit against a state official in federal court which seeks only prospective equitable relief for violations of federal law, even if the state is immune."). This prong of the analysis "rests on the premise—less delicately called a 'fiction,'— that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (citations omitted). Marshall's suit expressly names both the State Engineer of New Mexico and Director of the Interstate Stream Commission in their official

9

capacities and alleges that their *ex parte* communications with members of the judiciary violate federal law. As such, Marshall meets the first requirement of the *Ex parte Young* doctrine.

The second prong of the *Ex parte Young* exception requires that plaintiffs assert non-frivolous violations of federal law. *Lewis*, 261 F.3d at 975. The frivolity analysis is not contingent on whether "state officials actually violated federal law; rather, it is whether the plaintiffs have stated a non-frivolous, substantial claim for relief *under* federal law . . . ." *Harris*, 264 F.3d at 1289 (citations omitted) (cleaned up) (emphasis added). The determination of frivolity is distinct from the plausibility analysis conducted under Rule 12(b)(6): "the question whether the suit states a claim upon which relief can be granted is neither logically antecedent to nor coincident in scope with the Eleventh Amendment inquiry." *Id*. While plausibility is discussed *infra*, Marshall does allege violations of federal law sufficient to establish federal jurisdiction—namely, that State Employee Defendants committed (1) a conspiracy violative of 42 U.S.C. § 1985 and (2) a failure to prevent that conspiracy in violation of 42 U.S.C. § 1986. Am. Compl. ¶¶ 119-20.

The third prong of the *Ex parte Young* analysis requires that litigants seek prospective and equitable relief. Marshall seeks exactly that: an injunction prohibiting State Employee Defendants from engaging in *ex parte* communications with judges in the future. Am. Compl. ¶ 123(G).

Finally, suits may not proceed under the *Ex parte Young* exception if they infringe upon a state's special sovereignty interests. *See, e.g.*, *Elephant Butte*, 160 F.3d at 612. State Employee Defendants do not claim such an interest is at issue here. Further, the Court does not find that the relief Marshall seeks—an injunction prohibiting *ex parte* communications between state officials and members of the judiciary—rises to the level of "an excessive intrusion into an area of special state sovereign interest" sufficient to bar relief under the Eleventh Amendment. *Lewis*, 261 F.3d at 978.

In sum, Marshall has met the requirements to proceed with suit against State Employee Defendants pursuant to the *Ex parte Young* exception to the Eleventh Amendment.

## 2. Marshall's Amended Complaint Fails to Plausibly State a Claim Against State Employee Defendants

The Court now turns to the adequacy of Marshall's Amended Complaint under Rule 12(b)(6). While the Amended Complaint does not outline State Employee Defendants' alleged violations with specificity, Marshall alleges that *all* Defendants violated 42 U.S.C. §§ 1985 and 1986, by, respectively, (1) engaging in a conspiracy to deprive Marshall and others of their civil rights and (2) failing to prevent such a conspiracy. Am. Compl. ¶¶ 119-20. Although Marshall does not identify the subsection of § 1985 the State Employee Defendants allegedly violated, only subsection (3) refers to the deprivation of rights and privileges, and the Court therefore construes Marshall's Amended Complaint as one made specifically under § 1985(3).

To successfully plead a claim under § 1985(3), plaintiffs must plausibly allege (1) a conspiracy; (2) to interfere with their rights; (3) an act in furtherance of the conspiracy; and (4) a resulting injury. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Any such actions must also be motivated by racial or class-based animus. *Id.* (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971). The "'class-based animus' language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias." *Id.* (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 837 (1983)).

As to the first element, Marshall *does* generally allege a conspiracy—he simply does not do so plausibly. Across his Amended Complaint, Marshall inveighs against a vast array of parties,

amply employing innuendo, conclusory allegations, and personal attacks.[8] But "Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations . . ." and "must be pled with some degree of specificity." *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) (cleaned up) (citation omitted). No such specificity exists here: Marshall's entire Amended Complaint is insinuation, rather than "the well-pleaded, nonconclusory factual allegation of parallel behavior" required to give "rise to a 'plausible suggestion of conspiracy.'" *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 566).

Marshall also fails to allege that State Employee Defendants committed any acts in furtherance of a conspiracy. State Employee Defendants are correct that "[t]here are no specific allegations in the Amended Complaint regarding [the State Employee Defendants'] purported involvement in, or knowledge of, any conspiracy to violate any person's civil rights." ECF No. 21 at 3. Beyond his conclusory allegations of bias and impropriety, Marshall does not identify how either the contracts enacted by the State Engineer's office nor the alleged *ex parte* contacts violate any state or federal law, let alone one giving rise to a successful conspiracy claim under § 1985(3).

Marshall does make a cursory allegation that State Employee Defendants' conduct violated Marshall's procedural due process rights. ECF No. 47 at 4. In support of that argument, Marshall claims that State Employee Defendants' *ex parte* communications with members of the judiciary are violative of New Mexico Rule of Civil Procedure 1-071.4 (which governs *ex parte* contacts between the state and judiciary in the matter of stream adjudication suits). *Id.* at 3. However, that

---

[8] *See, e.g.*, Marshall's accusations that his discipline was an effort to silence his crusade against gubernatorial and judicial misconduct, Am. Compl. ¶ 14; Marshall's allegations regarding a Democratic Party conspiracy to target political opponents, Am. Compl. ¶¶ 105, 116; and Marshall's repeated allegations regarding Judge Wechsler's biases and supposed service as an attorney for the Navajo Nation, Am. Compl. *passim*. The Court notes that Marshall's repeated attacks on Judge Wechsler's integrity and candor have seen Marshall sanctioned on numerous occasions—a step this Court declines to take here.

Rule specifically provides for an exception *allowing ex parte* contacts to take place between the State Engineer's office and the judiciary:

> Rule 21-209(A) NMRA of the Code of Judicial Conduct [prohibiting *ex parte* communications] applies to stream adjudications, except that judges, special masters and members of their staff in accordance with this rule may communicate with the plaintiff with respect to matters not addressing the merits of any pending adjudication that relate to general problems of administration and management of a pending or impending adjudication or the accurate reporting of water rights claims in the court's records.

N.M. R. Civ. P. 1-071.4.

As the Committee Commentary on that Rule notes:

> The unique nature of a stream system adjudication, including its complexity and size, require coordination between the courts and the state to effectively manage the adjudication. At the same time, the courts are regulated by the Code of Judicial Conduct's prohibition against *ex parte* communications concerning pending matters. This rule *expressly permits the court to have limited ex parte contacts with the [State Engineer's office]* for the purposes of general administration and management of the adjudication.

*Id*. (emphasis added).

Further, Marshall fails to identify how the State Employee Defendants' actions were motivated by discriminatory intent towards any specific class of people, as is required under § 1985. *See Tilton*, 6 F.3d at 686. Marshall misconstrues the State Employee Defendants as arguing that the claims against them "should be dismissed because they had no racial or ethnic animus as a motive for their conduct." ECF No. 47 at 14. But this is not Defendants' claim. Rather, State Employee Defendants correctly note that claims under § 1985 must allege that "some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus [lay] behind the conspirators' action . . . ." ECF No. 21 at 6 (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)) (emphasis added). Marshall makes no claim regarding class-based animus—racial or otherwise. Indeed, Marshall only identifies the group harmed by Defendants' alleged § 1985

13

violations as "plaintiff and others[,]" failing to specify a unifying characteristic that could give rise to any claim of a class-based harm. Am. Compl. ¶ 119.

Lastly, Marshall fails to allege that State Employee Defendants' actions caused him any injury. The primary injury alleged in the Amendment Complaint is an infringement on his constitutional rights, stemming from what he terms the "new rules" promulgated by the Supreme Court of New Mexico (and attendant sanctions and fines). *See generally* Am. Compl. ¶¶ 108-18. State Employee Defendants are not alleged to have caused that injury. Even where Marshall focuses his attention on wrongdoing by the State Employee Defendants, he fails to explain how their actions—in the form of enacting contracts for services and communicating with Judge Wechsler *ex parte*— have caused him any harm.

Taken in sum, Marshall's claims against State Employee Defendants do not amount to a plausible § 1985 claim. And absent an underlying conspiracy, Marshall's § 1986 claim necessarily fails. *See Brown v. Reardon*, 770 F.2d 896, 905 (10th Cir. 1985) ("§ 1986 is dependent upon the validity of a § 1985 claim."). As Marshall's Amended Complaint fails to plausibly allege a credible claim under §1985 (and resultantly, fails to plausibly allege a claim under § 1986), Marshall's claims against State Employee Defendants are dismissed.

### B. Disciplinary Board Defendants are Entitled to Eleventh Amendment Sovereign Immunity

Marshall alleges several procedural and constitutional errors on the part of Disciplinary Board Defendants regarding the disciplinary proceedings against him. Am Compl. ¶ 66, ECF No. 8-1 at 296-98. Disciplinary Board Defendants move to dismiss on the grounds of Federal Rules of Civil Procedure 12(b)(6), for failure to state a claim, and 12(b)(1), pursuant to their Eleventh Amendment sovereign immunity. ECF No. 22 at 1-2. Between *ad hominem* attacks on Disciplinary

Board Defendants' professional integrity[9] and fealty to the constitutions of the United States and the State of New Mexico,[10] Marshall's Response alleges that Disciplinary Board Defendants are engaged in ongoing violations of federal law by continuing to prosecute him in state court. *See* ECF No. 46 at 2.

The requirements for suits to overcome Eleventh Amendment sovereign immunity pursuant to *Ex parte Young* are discussed *supra* Section III.A. To briefly recount, litigants must (1) be suing state officials, rather than the state itself; (2) alleging a non-frivolous violation of federal law; (3) seeking prospective and equitable relief; and (4) the suit must not implicate special sovereignty interests. *Lewis*, 261 F.3d at 975.

Marshall does not overcome the Eleventh Amendment's barrier to suit as to Disciplinary Board Defendants. Marshall's Amended Complaint meets two of the criteria necessary for the *Ex parte Young* exception to apply: he is alleging a non-frivolous violation of federal law, Am. Compl. ¶¶ 119-20 (identifying all Defendants as having violated §§ 1985 and 1986), and his suit implicates no special sovereignty interests. Marshall fails, however, to meet the other requirements.

In contrast to Marshall's claims against State Employee Defendants, Marshall's claims against Disciplinary Board Defendants seek relief impermissible under the terms of *Ex parte Young* itself. The Supreme Court has recently emphasized that *Ex parte Young* does not traditionally allow for injunctions against the "machinery" of state supreme courts—such as the

---

[9] *See*, *e.g.*, ECF No. 46 at 6 (accusing Disciplinary Board Defendants of having "consciously disregarded the controlling authorities . . .").

[10] *Id.* at 5 ("[D]efendants seem to have forgotten, that all public officials, judges, and lawyers have taken an oath to support the constitution of the United States and the constitution and laws of [New Mexico].") (citation omitted).

Disciplinary Board. *See Whole Women's Health v. Jackson*, 595 U.S. 30, 39 (2021). Indeed, "[a]s *Ex parte Young* put it, 'an injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'" *Id*. (quoting *Ex parte Young*, 209 U.S. at 163). Rather, "[i]f a state court errs in its rulings . . . the traditional remedy has been some form of appeal." *Id.*

To that point, Marshall *did* appeal the Disciplinary Board's rulings and recommendations to the Supreme Court of New Mexico—who rejected his claims. *See In re Marshall*, 528 P.3d at 653. Marshall then sought relief from the United States Supreme Court, who declined his petition for writ of certiorari. *Marshall*, 142 S. Ct at 2752. Marshall now attempts a third attack on the Disciplinary Board's proceedings, this time collaterally. But *Ex parte Young* is not a vehicle for him to do so.

Marshall's claims against Disciplinary Board Defendants also cannot advance in that they seek only retroactive relief. His Amended Complaint asks this Court for "injunctions" against Disciplinary Board Defendants regarding the enforcement of the sanctions against him and suspension of his license. Am. Compl. ¶ 123(D). Such claims theoretically entail prospective equitable relief. But Disciplinary Counsel are not the party against whom such sanctions and injunctions can be levied: attorney suspension is a matter for the Supreme Court of New Mexico. *See* N.M. R. Gov. Disc. 17-206(A).

At the time that court adopted the findings of the Disciplinary Board, the Disciplinary Board was no longer the appropriate party from whom Marshall could seek relief. As such, the only step this Court could take regarding Disciplinary Board Defendants would be to retroactively critique proceedings already conducted, rather than to address ongoing violations of federal law. To the extent that Marshall also takes issue with ongoing, separate disciplinary proceedings, those claims are not appropriately raised in his Amended Complaint.

Disciplinary Board Defendants are thus entitled to sovereign immunity under the Eleventh Amendment, and Marshall's claims against them are necessarily dismissed without prejudice for lack of jurisdiction. As the Court lacks jurisdiction over Marshall's claims against the Disciplinary Board Defendants, the Court declines to address Disciplinary Board Defendants' 12(b)(6) argument on the merits.

### C. This Court Does Not Have Jurisdiction Over Plaintiff's Claims Against Defendant Bacon Pursuant to the *Rooker-Feldman* Doctrine

Marshall alleges that his suspension is the result of "new rules" articulated by the Supreme Court of New Mexico, whose "main purpose and effect is to cover up judicial misconduct." Am. Compl. ¶ 69. Namely, Marshall alleges that Defendant Bacon suspended Marshall as a retaliatory tactic to cover up wrongdoing by herself and her former employer, the now-deceased former Governor of New Mexico Bill Richardson.[11]

Defendant Bacon moves to dismiss on the grounds that Marshall's claims are barred by the *Rooker-Feldman* doctrine, claim preclusion, and res judicata, and that Bacon, as an individual defendant, cannot provide Marshall with the relief he seeks. ECF No. 20 at 2. Marshall responds that the relevant sanctions and proceedings are ongoing, and that his claims are thus not barred by *Rooker-Feldman*. *See* ECF No. 45. Marshall further argues that his challenge is a general constitutional one, outside of the scope of *Rooker-Feldman* entirely. *Id.* at 8. But Defendant

---

[11] Marshall accuses Bacon of the following: "[A]cting as [former Governor of New Mexico Bill] Richardson's protector, by covering up the pay to play frauds that Richardson committed, and to get rid of challenges to Richardson's water deal," Am. Compl. ¶ 14; "retaliating against Marshall through suspending him from the practice of law[,]" *id.* ¶ 15; "[writing] opinions to cover up for Bill Richardson's wrongdoing, to cover up for herself as Richardson's lawyer, to advance Richardson's initiatives, and to retaliate against Marshall and his clients[,]" ECF No. 8-1 at 305; failing to make "disclosures about actual or potential conflicts of interest, or any other grounds for possible recusal[,]" *id.*; "tak[ing] away Marshall's basic constitutional protections[,]" *id.* at 299; "bar[ring] Marshall from speaking in his own defense . . . unless he first surrenders the protections of procedural due process[,]" *id.*; and numerous other ethical and legal violations.

Bacon's invocation of *Rooker-Feldman* is appropriate: this Court does not have jurisdiction over what is functionally a challenge to fully adjudicated state proceedings, despite Marshall's efforts to circumvent *Rooker-Feldman*'s jurisdictional bar.

As articulated by the Supreme Court, the *Rooker-Feldman* doctrine serves as a bar to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). *Rooker-Feldman* is a "narrow" doctrine, and the Supreme Court has cautioned against the tendency of lower courts to expand its scope. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006). The present instance, however, is a paradigmatic example of the kind of case that *Rooker-Feldman* serves to prohibit: a transparent challenge to final state court proceedings by a losing party.

Marshall's Amended Complaint attempts to circumvent *Rooker-Feldman* by challenging what he terms "new rules" supposedly promulgated by the Supreme Court of New Mexico. Am. Compl. *passim*. Upon inspection, however, it becomes clear that Marshall's Amended Complaint is a collateral attack on the disciplinary proceedings against him, rather than the kind of general constitutional challenge permitted under *Rooker-Feldman*. This is made most obvious by the fact that the alleged "new rules" are found not in the form of regulations or orders issued by the Supreme Court of New Mexico, but exclusively in the form of suspension proceedings against Marshall. *See, e.g.*, Am. Compl. ¶ 1 (claiming that the new rules were "first used against Victor Marshall, and now they have been institutionalized and extended to all attorneys and their clients, in [the suspension opinions.]"); *id.* ¶ 36 ("The new rules and sanctions are set forth in [the suspension opinions and disciplinary report.]").

To be sure, Marshall attempts to avoid this fact. *See*, *e.g.*, Marshall's oblique references to "the new rules . . . issued on March 13 and 16, 2023"—namely, the proceedings against him, Am. Compl. ¶ 123(A); and his request that this Court issue "preliminary and permanent injunctions against enforcement of the new rules"—namely, his suspension, Am. Compl. ¶ 123(D). However, couching his challenge to a final state court adjudication in terms of constitutional generality does not transform Marshall's claims into ones over which this Court may exercise jurisdiction.

Marshall also claims that the requisite element of finality is not met, because he is subject to ongoing, separate proceedings related to his suspension. ECF No. 45 at 1-2. He is wrong. As Defendant Bacon's Motion to Dismiss accurately notes, "[w]hen Marshall filed his complaint in this case, all issues of law and fact related to his suspension were determined, the Supreme Court of New Mexico had finally disposed of the case, Marshall had petitioned the United States Supreme Court for a writ of certiorari, and that Court had denied review." ECF No. 20 at 10. Any subsequent proceedings do not bear on the finality of the suspension rulings specifically challenged by Marshall in his Amended Complaint. Further, while Marshall postulates that the denial of his Petition for Writ of Certiorari "may have been based on a lack of finality," ECF No. 45 at 7, the Court will not indulge that speculation.

Finally, the Court notes that none of the relief sought by Marshall can be granted by Defendant Bacon as an individual, even in her official capacity. *See* ECF No. 20 at 13-14. Only the Supreme Court of New Mexico—as a body writ large—can grant Marshall the relief he seeks as to his suspension, fines, and the sanctions against him. As such, any claims against Defendant Bacon individually likely fail to meet the requirements of Rule 12(b)(6), and Marshall's failure to join an indispensable party—the Supreme Court of New Mexico—may further render his complaint subject to dismissal under Federal Rule of Civil Procedure 12(b)(7). However, because

Marshall's underlying claim is barred by *Rooker-Feldman*, the Court declines to fully address those issues, as well as the issues of claim preclusion and res judicata.

For the foregoing reasons, Marshall's claims against Defendant Bacon must be dismissed. Dismissals on *Rooker-Feldman* grounds are without prejudice. *See Atkinson-Bird v. Utah, Div. of Child & Fam. Servs.*, 92 F. App'x 645, 648 (10th Cir. 2004) ("Where the *Rooker–Feldman* doctrine applies, a federal court lacks jurisdiction to reach the merits and, thus, has no power but to dismiss the case without prejudice . . .").

### IV.   CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED** that:

1. Defendant C. Shannon Bacon's Motion to Dismiss, ECF No. 20, is **GRANTED** consistent with this Order;

2. Defendants Mike Hamman and Hannah Riseley-White's Motion to Dismiss for Failure to State a Claim and Eleventh Amendment Immunity, ECF No. 21, is **GRANTED** consistent with this Order;

3. Defendants Howard Thomas, Anne L. Taylor, and Jane Gagne's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim and as Barred by Immunity, ECF No. 22, is **GRANTED** consistent with this Order;

4. Plaintiff's Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE**;

5. All pending motions are **DENIED** as moot; and

6. This case is now **CLOSED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE